# In the United States Court of Federal Claims

No. 07-777C
Filed: December 10, 2012[*]
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | Accord and Satisfaction; |
| | * | Contract Disputes Act, 41 U.S.C. § 7109; |
| | * | Damages; |
| METCALF CONSTRUCTION CO., INC., | * | Federal Acquisition Regulations: |
| | * | 32.614-1, 48 C.F.R. § 32.614-1 (interest |
| Plaintiff, | * | due government); |
| | * | 52.211-13, 48 C.F.R. § 52.211-13 |
| v. | * | (compensable delay); |
| | * | 52.242-14, 48 C.F.R. § 52.242-14 (delay |
| THE UNITED STATES, | * | damages exclude profit); |
| | * | 52.236-2(b), 48 C.F.R. § 52.236-2(b) |
| Defendant. | * | (contracting officer's duty to investigate |
| | * | a notice of a differing site condition); |
| | * | Interest. |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Robert J. Symon**, Bradley Arant Boult Cummings LLP, Washington, D.C., Counsel for Plaintiff.

**David Samuel Silverbrand, Dawn E. Goodman, Kenneth M. Dintzer, Russell J. Upton,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Katherine A. O'Neill**, **Stephanie Cotes-Harman**, Assistant Director, Office of the General Counsel, Department of the Navy, Of Counsel for Defendant.

### MEMORANDUM OPINION AND FINAL ORDER
### REGARDING CONTRACT DISPUTES ACT DAMAGES

**BRADEN, *Judge*.**

---

[*] On December 7, 2012, the court forwarded a sealed copy of this Memorandum Opinion and Order to the parties to delete any information considered to be confidential and/or privileged, and note any citation or editorial errors requiring correction. The court has incorporated some of these comments and corrected or clarified certain portions herein.

## I.    BACKGROUND.[1]

On December 9, 2011, the court issued a Memorandum Opinion and Order determining that Metcalf Construction Company, Inc. ("Metcalf") failed to establish liability for all claims alleged in the November 10, 2009 Amended Complaint, but identified two events that constituted a breach of contract. *See Metcalf Const. Co. v. United States*, 102 Fed. Cl. 334, 348-55, 369-70 (2011).  First, the Department of the Navy ("Navy") failed to provide Metcalf with consideration for the January 29, 2003 Modification P00001.  *Id*. at 369-70.  To compensate Metcalf, the court ruled that Metcalf was entitled to a 73-day extension. *Id*. at 370.[2]  In addition, the court determined that the Navy violated Federal Acquisition Regulation ("FAR") 48 C.F.R. § 52.236-2(b) ("FAR 52.236-2(b)"),[3] by failing to investigate in a prompt manner Metcalf's June 24, 2003 notice of a differing site condition concerning an expansive soil condition.  *Id*. at 353-55.  To compensate Metcalf, the court ruled that Metcalf was entitled to an additional 306-day extension. *Id*.[4]

Thereafter, the court convened a conference in chambers with counsel of record, the client representative, and other entities with a financial interest in the case, in an attempt to reach

---

[1] The relevant facts and procedural history are set forth in *Metcalf Construction Co. v. United States*, 102 Fed. Cl. 334 (2011) ("*Metcalf*").

[2] The court has reconsidered this ruling and determined that the proper remedy would be to compensate Metcalf for the 99 days of work lost between November 21, 2002, when the Notice To Proceed was supposed to issue, pursuant to the Request For Proposals, and February 28, 2003, *i.e.*, the day by which Metcalf had to begin work on the project.

[3] FAR 52.236-2(b) states:

(b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice [of a differing site condition from the contractor]. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

48 C.F.R. § 52.236-2(b) (2002).

[4] Metcalf subsequently corrected the court's calculation.  Although Metcalf requested that the Navy investigate a potential differing site condition on June 24, 2003, Metcalf could not proceed until November 19, 2003, the date the Navy approved Metcalf's design.  As a result, the extension to which Metcalf should be entitled is 260 days, not 306 days.  *See* Plaintiff's February 3, 2012 Initial Post-Trial Brief Regarding Damages ("2/3/12 Pl. PT D Br.") at 8-9.

a resolution regarding damages, without further adjudication.  Since that effort was unsuccessful, the parties filed post-trial briefs on damages.[5]

## II.   DISCUSSION.

### A.   Whether Plaintiff Is Entitled To The Contract Balance Withheld By The Department Of The Navy.

#### 1.   The Plaintiff's Argument.

The adjusted price of the October 22, 2002 Contract between Metcalf and the Navy, including all modifications, was $49,947,872.  *See Metcalf*, 102 Fed. Cl. at 338 (citing JX E32 at DEF0542523).  To date, the Navy has paid Metcalf $49,050,899.  2/3/12 Pl. PT D Br. at 6 (citing *Metcalf*, 102 Fed. Cl. at 339); *see also* Jan. 4, 2010 Stip. ¶ 14.  In light of the court's re-determination that Metcalf is due a 260-day extension (*see supra* note 4), the 136-day delay that is the basis for the Government's withholding is more than offset, and the $896,973 amount should be refunded to Metcalf.  2/3/12 Pl. PT D Br. at 3, 6-7.

#### 2.   The Government's Response.

The Government responds that Metcalf is not entitled to receive the $896,973 amount withheld and also owes an additional $2,673,507 for the Navy's counterclaim based on Metcalf's failure to complete the required work within the time specified by the October 22, 2002 Contract, as amended.  3/23/12 Gov't PT D Br. at 36.  The court's finding that Metcalf is entitled to be "credited for an extension," does not mean that the October 22, 2002 Contract's completion date must be extended.  3/23/12 Gov't PT D Br. at 36.  Specifically, as to the extension that the court determined was due Metcalf, because of the Navy's failure to provide consideration for Modification P00001, that extension was accounted for in other contract modifications extending the initial final completion date over a year, *i.e.*, from June 27, 2005 to October 17, 2006.  3/23/12 Gov't PT D Br. at 36-37.  As to the Navy's delay in investigating Metcalf's June 24, 2003 notice of a differing site condition, Metcalf's schedule shows that, as late as July 1, 2006, Metcalf projected a completion date of October 6, 2006.  3/23/12 Gov't PT D Br. at 27 (citing DX 2934A at 51-52).  Since the court determined that post-January 2006 delays were not caused by the Navy, Metcalf is not entitled to the contract balance and remains liable for $2,673,507 in liquidated damages for its failure to complete the October 22, 2002 Contract on October 17, 2006.  3/23/12 Gov't PT D Br. at 37 (citing *Metcalf*, 102 Fed. Cl. at 370).

#### 3.   The Plaintiff's Reply.

Metcalf replies that the Government seeks an unwarranted reconsideration of the court's determination that Metcalf is entitled to an extension that "subsumes" the 136-day delay on

---

[5] Thereafter, Metcalf filed its February 3, 2012 Post-Trial Brief Regarding Damages; the Government filed a Post-Trial Brief Regarding Damages ("3/23/12 PT D Br."); and Metcalf filed a March 30, 2012 Reply Brief ("3/30/12 Pl. PT D Reply").

which the Government's November 30, 2009 Counterclaim for Liquidated Damages is based.[6] 3/30/12 Pl. PT D Reply at 2-3.

### 4.   The Court's Resolution.

The court's December 9, 2011 Memorandum Opinion and Order did not adjudicate the Government's November 30, 2009 Counterclaim for Liquidated Damages. The court does so here.

Paragraph 1 D.2 of the October 22, 2002 Contract provides:

If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $290 per unit per calendar day not completed for each day of delay.

JX A1 at DEF0498371.

The trial record establishes that the parties mutually agreed that October 17, 2006 was the final adjusted completion date. JX E26 at DEF0064694. The record also establishes that Metcalf did not actually complete performance until March 2, 2007. PX 455. Therefore, the Navy is entitled to liquidated damages of $290 per unit for each day of delay, or $3,570,480. PX 455.

Accordingly, the court has determined that Metcalf is not entitled to the $896,973 withheld by the Navy, but that amount must be deducted from the $3,570,480 liquidated damages due. Therefore, Metcalf owes the Navy $2,673,507, in addition to interest, as provided in FAR 32.608-1,[7] at the rate established by the U.S. Treasury under Public Law 92-41.

### B.   Whether Plaintiff Is Entitled To Direct And "Escalation" Costs.

### 1.   The Plaintiff's Argument.

The court determined that "on August 5, 2004, the date the Navy finally denied Metcalf's notice of a differing site condition, Metcalf was approximately 200 days behind schedule." *Metcalf*, 102 Fed. Cl. at 370, n.42 (citing PTX 779 at 17 (Stynchcomb)). Therefore, because of Metcalf's subsequent efforts to "catch up," Metcalf argues that it should be compensated for

---

[6] *See* Nov. 30, 2009 Answer and Counterclaim (Dkt. 46 at 18).

[7] FAR 32.608-1 states:

(a) Unless specified otherwise under the clause at 52.232–17, interest charges shall apply to any contract debt unpaid after 30 days from the issuance of a demand[.]

48 C.F.R. § 32.608-1.

"additional direct costs incurred as a result of the Navy's failure to investigate in a timely manner, including both its net additional costs associated with the post-tension/slab[,] as well as other direct costs flowing from the breach." 2/3/12 Pl. PT D Br. at 10. In addition, the court determined that the Navy's "delay and Metcalf's effort to catch up resulted in Metcalf addressing the expansive soils situation by using a post-tension slab design that imposed significant costs on Metcalf, but were of greater benefit to the Navy than the plain concrete slabs typically used[.]" *Metcalf*, 102 Fed. Cl. at 370 n.42. Therefore, Metcalf is entitled to $2,936,180 in "direct costs,"[8] to the "escalation costs" of certain commodity items,[9] and to "direct cost mark-ups of 1.96% for overhead and 10% for profit," for a total of $3,903,382 for the "stronger post-tension slabs and material escalation costs." 2/3/12 Pl. PT D Br. at 5, 12.

## 2.    The Government's Response.

Although the court found the Navy's delay in addressing Metcalf's notice of a potential differing site condition imposed significant costs on Metcalf and that Metcalf's use of post-tension slabs conferred a benefit to the Navy beyond what the October 22, 2002 Contract required, the court determined that Metcalf did not establish a differing site condition claim. 3/23/12 Gov't PT D Br. at 22-24 (citing *Metcalf*, 102 Fed. Cl. at 355, 371). As such, Metcalf is not entitled to additional direct costs voluntarily incurred by Metcalf, as opposed to those imposed by the Navy via changed specifications. 3/23/12 Gov't PT D Br. at 24 (citing *J.D. Hedin Const. Co. v. United States*, 347 F.2d 235, 245 (Ct. Cl. 1965). The Government further responds that Metcalf's reliance on *United States v. Amdahl Corp.*, 786 F.2d 387 (Fed. Cir. 1986) is misplaced, because the United States Court of Appeals for the Federal Circuit subsequently stated that "*Amdahl* speaks to the situation in which the government receives the goods or services for which it contracted, but then seeks to avoid payment[.]" *United Pacific Ins. Co. v. United States*, 464 F.3d 1325, 1334 (Fed. Cir. 2006). In this case, however, the Navy contracted and paid for 212 housing units. The fact that Metcalf, after its own post-award soils test, elected to use a post-tension slab that cost more than the plain concrete slab itemized in Metcalf's July 26, 2002 bid price was not attributed to any Navy action. 3/23/12 Gov't PT D Br. at 26. Metcalf assumed this additional cost and therefore is not entitled to receive damages for this decision. 3/23/12 Gov't PT D Br. at 26. Unlike in *Amdahl*, the October 22, 2002 Contract in this case never was rendered invalid, and therefore there is no need to resort to equitable remedies. 3/23/12 Gov't PT D Br. at 26-27. Moreover, because the court determined that Metcalf failed to establish a differing site condition, Metcalf is not entitled to recover direct costs as damages nor equitable relief. 3/23/12 Gov't PT D Br. at 26-28.

## 3.    The Plaintiff's Reply.

Metcalf replies that it switched designs to make up for delays in the schedule caused by the Navy's failure promptly to investigate the notice of differing site condition – and that design

---

[8] Metcalf states that it incurred "direct costs" of $2,936,180. 2/13/12 Pl. PT Br. at 12 (citing JX L1 at DEF0325933 & n.23; JX L4 at PX967840).

[9] Metcalf states that it incurred "escalation costs" of $435,236 for steel and $108,899 for plywood and lumber. 2/13/12 Pl. PT Br. at 12 (citing JX L4 at PX967840).

change came at a significant cost to Metcalf, as recognized by the court.  3/30/12 Pl. PT D Reply at 4.  At trial, Metcalf introduced evidence establishing that the net additional cost for the post-tension slab work was $2,936,180.  3/30/12 Pl. PT D Reply at 5 (citing JX L1 at DEF0325933 & n.23; JX L4 at PX967840).  As for the Government's challenge that Metcalf did not establish all the elements of a modified total cost claim, Metcalf counters it did so with its own damages expert.  3/30/12 Pl. PT D Reply at 7 (citing PX 778 (Krafft)).

### 4.     The Court's Resolution.

Metcalf is not correct in asserting that its election to utilize post-tension slabs was required to address the delay caused by the Navy's failure promptly to investigate.  That election was caused by Metcalf's failure to conduct an independent soil analysis and include the cost of post-tension slabs in its bid on the project.  For this reason, the court finds that the Navy's violation of FAR 52.236-2(b) did not render the Navy responsible for all the costs—both direct and "escalation"—that Metcalf incurred unilaterally in deciding to use post-tension slabs to address the expansive soil condition.

Accordingly, Metcalf is not entitled to direct and "escalation" costs incurred in addressing the expansive soil condition.

### C.     Whether Plaintiff Is Entitled To Damages For The Contract Breaches Identified By The Court.

### 1.     The Plaintiff's Argument.

As previously discussed, Metcalf corrected the court to clarify that Metcalf is entitled to a 260-day extension for the Navy's violation of FAR 52.236-2(b).  2/3/12 Pl. PT D Br. at 4, 9. Metcalf's "ground conditions" project rate was $4,018 per day.  JX L3 at PX967792.  Therefore, Metcalf argues that this rate should be multiplied by 260 days and a mark-up of 1.96% for overhead and 10% for profit should be added to yield delay damages of $1,171,671.  2/3/12 Pl. PT D Br. at 10 & Ex. 1.

### 2.     The Government's Response.

The Government's response begins with a general exposition and then discusses three additional specific reasons why Metcalf is not entitled to delay damages.  As to the general objections, the Government notes that the court did not award Metcalf delay damages, because Metcalf "abandoned its delay and impact claim" and the "only evidence presented at trial was for a modified total cost theory of damages."  3/23/12 Gov't PT D Br. at 5-6, 9.  Therefore, the court's recognition that an extension was due does not necessarily entitle Metcalf to damages for compensable delay, as a matter of law.  3/23/12 Gov't PT D Br. at 11 (citing FAR 52.211-13).[10]

---

[10] FAR 52.211-13 states:

Time extensions for contract changes will depend upon the extent, if any, by which the changes cause delay in the completion of the various elements of construction. The change order granting the time extension may provide that the

In addition, Metcalf did not meet its burden of proof to establish project delay by a Critical Path Method ("CPM") analysis or other evidence as to how the Navy's actions impacted the critical path.[11]  3/23/12 Gov't PT D Br. at 11 (citing PX 779 at 16-20 (Metcalf damages expert testifying that it was not feasible to conduct a CPM analysis) (Stynchcomb)).  Despite Metcalf's expert's inability to conduct a CPM analysis, the Government's expert, Mr. Weathers did so, pointing out that Metcalf's July 1, 2006 internal schedule indicated that it would complete the project on time, despite any external delays.  3/23/12 Gov't PT D Br. at 12 (citing DX 2394A at 51-52).  In any event, Metcalf "caught up" by July 1, 2006, so that any delay in finally completing the project was not caused by the Navy, but by Metcalf's subsequent actions relating to the removal of the chlordane stockpiles.  3/23/12 Gov't PT D Br. at 12 (citing PX 779 at 22-24 (Metcalf's damages expert) (Stynchcomb)).  Accordingly, Metcalf failed to satisfy its burden to establish that any delay from November 19, 2003 through August 5, 2004 adversely affected the "critical path."  3/23/12 Gov't PT D Br. at 12.

In addition, Metcalf is also not entitled to delay damages, because: 1) Metcalf's January 30, 2004 schedule established, as of that date, no delay had occurred from any Navy action; 2) many of the days during the time period for which the court ruled Metcalf was entitled to a 306-day extension were addressed by time extension contract modifications; and 3) there were "concurrent delays."  3/23/12 Gov't PT D Br. at 13.  As a result, there was "no causal link between the [Navy's failure to investigate Metcalf's notice of a differing site condition] and the ultimate delay on the project."  3/23/12 Gov't PT D Br. at 13.  In addition, while Metcalf failed to conduct a CPM analysis, the Government's damage expert confirmed that Metcalf is not entitled to any compensable delay, other than what it previously received.  3/23/12 Gov't PT D Br. at 13-14.  The Government's detailed argument of these defenses follows.

### a.   After January 30, 2004, Plaintiff Incurred No Delay As A Result Of The Navy's Actions.

The Government argues that the evidence establishes that, as of January 30, 2004, Metcalf anticipated an on-time project completion of April 13, 2005.  3/23/12 Gov't PT D Br. at 14 (citing DX 2934A at 45 (Weathers)).  Nevertheless, the Navy granted Metcalf an extension of 92 additional days.  DX 2934A at 47 (Weathers).

---

contract completion date will be extended only for those specific elements related to the changed work and that the remaining contract completion dates for all other portions of the work will not be altered. The change order also may provide an equitable readjustment of liquidated damages under the new completion schedule.

48 C.F.R. § 52.211-13.

[11]  The "critical path" has been described as "an efficient way of organizing and scheduling a complex project. . . .  A delay . . . of work along a critical path will affect the entire project."  *Haney v. United States*, 676 F.2d 584, 595 (Ct. Cl. 1982).

The chart below lists four bilateral modifications that the Navy granted Metcalf to address "issues and delays":[12]

| Bilateral Modification No. | Description of Work | No. of Days In Bilateral Modification | Date Modification Issued | Exhibit No. |
|---|---|---|---|---|
| A00003 | Relocate OH Electrical | 21 | 6/8/04 | JX E6 |
| A00007 | Prototype Over-Excavation | 5 | 4/26/04 | JX E10 |
| A00011 | Adverse Weather | 17 | 7/13/05 | JX E14 |
| A00012 | Concrete Strike | 49 | 2/27/04-4/16/04 | JX E15 |
| | **TOTAL** | 92 | | |

3/23/12 Gov't D Br. at 15-16.  Consequently, as of May 28, 2004, Metcalf was "on or ahead of schedule."  DX 2934A at 47.

Therefore, the Government takes issue with Metcalf's argument that it is entitled to compensable delay of 260 days for the Navy's violation of FAR 52.236-2(b), since Metcalf failed to satisfy its burden to establish that specific delay was the cause of Metcalf's failure to complete the project on October 17, 2006.  3/23/12 Gov't PT D Br. at 14-15.  Moreover, any additional recovery by Metcalf for any "issues and delays" during this period would result in a "windfall," particularly since each of the aforementioned modifications included the following release:

> Acceptance of this modification by [Metcalf] constitutes an accord and satisfaction and represents payment in full for both time and money and for all costs, impact effect, and for delays and disruptions out of, or incidental to, the work as herein, revised.

3/23/12 Gov't PT D Br. at 16 (citing JX EX6; JX EX10; JX EX14; JX EX15).

As such, Metcalf's claim for delay compensation during the period July 19, 2003 through August 3, 2004, as a matter of law, is barred by accord and satisfaction.  3/23/12 Gov't PT D Br. at 16.

---

[12] The entries in the "Date Modification Issued" column of the chart do not match the effective dates listed on the cited Modifications.  *See, e.g.*, JXE10 at DEF0064490-91 (stating that the modification was mutually agreed to on April 26, 2004, although the effective date listed was August 17, 2004).  The "Date Modification Issued" entry for Modification A00011 is the effective date listed on Modification A00011.  JX E14.

**b.      Plaintiff Did Not Satisfy Its Burden To Establish That The Department Of The Navy Was The "Sole Cause" Of The Delay Investigating Plaintiff's Notice Of The Differing Site Condition.**

Next, the Government cites the testimony of its damages expert, to support the contention that any delay by the Navy during the period November 19, 2003-August 5, 2004 was "concurrent with contractor-caused delay." 3/23/12 Gov't PT D Br. at 18 (citing DX 2934A at 6 (Weathers)). First, the actions and inactions of Mr. Florez, Metcalf's Project Manager, leading to his July 16, 2004 termination, were an independent cause of Metcalf's delay and additional costs. 3/23/12 Gov't PT D Br. at 19 (citing DX 159 at PX014599, DX 160 at PX129971-72, DX 2675). In addition, the performance problems of one of Metcalf's subcontractors, Division 2 Construction, Inc. ("D2C"), caused delays during this same period. 3/23/12 Gov't PT D Br. at 19. Since the court determined that the Government denied the differing site conditions on August 5, 2004, and Metcalf terminated D2C in November 2004 for delays caused by D2C beginning in June 2004 (DX 139; DX 156), the "significant delays caused by D2C [were] concurrent with [the Navy's] actions with respect to investigation of the expansive soil issue making non-compensable the time during which the [c]ourt found that the Government failed to investigate the differing site condition." 3/23/12 Gov't PT D Br. at 19.

**c.      Plaintiff Failed To Present Evidence To Support Its Damages Theory.**

Metcalf argues that it is entitled to delay damages, based on a "general conditions" rate of $4,018 per day, *i.e.*, the rate reported in the September 2, 2009 Amendment to Metcalf's March 30, 2007 Global Certified Claim. 2/3/12 Pl. PT D Br. at 7-10. The Government responds that Metcalf abandoned the $4,018 rate when it amended its Global Certified Claim again on November 9, 2009. 3/23/12 Gov't PT D Br. at 20 (citing JX L4). In addition, Metcalf failed to proffer any witness, including Metcalf's damages expert, to support this rate. 3/23/12 Gov't PT D Br. at 20. In addition, the Government points out two other problems with Metcalf's damage calculation. First, Metcalf's general overhead rate should be no more than 1.83%, based on the Government's expert testimony that Metcalf improperly included overhead for the entire year 2002, although the effective date of the contract was January 29, 2003. 3/23/12 Gov't PT D Br. at 21 (citing DX 2934A at 67 (Weathers)). Second, Metcalf requests a 10% profit, but FAR

52.242-14[13] prohibits profit from being included in delay damages.  3/23/12 Gov't PT D Br. at 21-22 (citing JX D1 at DEF0063716 (incorporating FAR 52.242-14 into the October 22, 2002 Contract)).

### 3.    The Plaintiff's Reply.

Metcalf concedes that it "did not present evidence of compensable delay under the delay and impact theory that it had originally set forth in Count II of its Complaint . . . to demonstrate the severe inequities of Metcalf pursuing its claims under the Contract versus a breach of contract theory." 3/30/12 Pl. PT D Reply at 7.  Metcalf explains that it made that decision, as its damages expert explained, "because of the pervasive nature of the damages [Metcalf] suffered, the only practical method to calculate breach of contract damages was by the modified total cost method."  3/30/12 Pl. PT D Reply at 8 (quoting PX 778 at 2 (Krafft)).  The Government, however, cites no decision requiring that a plaintiff must present evidence of compensable delay in a breach of contract claim and, in any event, Metcalf's delay damages are "easily quantifiable from the record."  3/30/12 Pl. PT D Reply at 8.  In addition, apart from the fact that FAR 52.11-13, which the Government cites, does not deal with compensable delay damages, Metcalf's schedule is not relevant to whether the Navy's delay caused Metcalf injury, and the court made no findings that the Navy was entitled to an offset for "concurrent delays." 3/30/12 Pl. PT D Reply at 9-10.

### 4.    The Court's Resolution.

The Government cites bilateral modifications issued between November 19, 2003 and August 5, 2004, i.e., A0003 (JX E6), A0007 (JX E10), A00011 (JX E14), and A00012 (JX E15), to evidence that Metcalf received additional time and compensation during that period and, therefore, is not entitled to delay damages.  The release contained in the aforementioned bilateral modifications states that acceptance of a modification was "accord and satisfaction[14] and

---

[13] FAR 52.242-14 states:

(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly.

48 C.F.R. § 52.242-14(b).

[14] An "accord" is "an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of an existing or matured claim, something other than that which is claimed to be due."  *Chesapeake & Potomac Tel. Co. v. United States*, 654 F.2d 711, 716 (Ct. Cl. 1981).  "Satisfaction" is the "execution or performance of the agreement, or the actual giving and taking of some agreed thing."  *Id.*

represents payment . . . for all costs, impact effect, and for delays and disruptions out of, or incident to, *the work herein described*." JX E6; JX E10; JX E14; JX E15 (emphasis added). But, the "work herein described" concerned relocating an overhead circuit, sizing a duct lie, and modifying transformers, or external factors, such as adverse weather and a concrete strike, that had no relationship to the Navy's failure promptly to investigate Metcalf's notice of a differing site condition. In addition, the bilateral modifications predate Metcalf's March 30, 2007 Global Certified Claim that was the source of continuing negotiations with the Navy until this suit was filed. The United States Court of Appeals for the Federal Circuit has affirmed application of the principle "that when the government and a contractor continue to consider a contractor's claim after the contractor has signed a release, their conduct demonstrates that they did not consider the release to constitute an accord and satisfaction of the claim." *England v. Sherman R. Smoot Corp*, 388 F.3d 844, 848 (2004); *see also id*. at 857. Therefore, accord and satisfaction are not applicable in this case.

The Government cites two incidents of "concurrent delay." 3/23/12 Gov't PT D Br. at 19 (citing Exhibit 21 to Government's damage expert report (Weathers) (DX 156; DX 159 at PX014599; DX 160 at PX129971-72; and DX 2675)). The court carefully has reviewed each of the internal Metcalf documents relied on by the Government to establish that Mr. Florez was responsible for delay prior to his July 16, 2004 termination. Only two even use the word "delay." *See* DX 159 at PX014599 (concluding that Mr. Florez's actions or non-actions "delayed the project by at least 3 months"); DX 2675 at PX967111 (citing "delay in the project"). The court, however, deems these statements to be unreliable, as they were made to create a record to support the termination of Mr. Florez, were not made contemporaneous with the alleged delay attributed to Mr. Florez, and, in any event, do not establish the fact of any delay. The court also carefully reviewed other Metcalf documents relied on by the Government to show that Metcalf's subcontractor D2C was responsible for delay from June 2004 to November 2004. 3/23/12 Gov't PT D Br. at 19 (citing Exhibit 140 to Government's damage expert report (Weathers) (DX 140; DX 156)). DX 140 is a letter from Mr. Metcalf to D2C complaining about performance and stating "your work in general and concrete work specifically *will* seriously impact the critical path and delay the completion of the project." DX 140 at 01519039 (emphasis added). This document, however, does not state that any delay actually occurred. DX 156 is a November 12, 2004 termination notice that states D2C did not cure several notices of breach. This document does not reference any delay. Consequently, the Government failed to establish any "concurrent delay" by this evidence.

Instead, the facts of this case present one of sequential delay, first starting with the Navy's delay in issuing a proper modification and notice to proceed. *See Metcalf*, 102 Fed. Cl. at 369-70. Next, the Navy failed promptly to investigate Metcalf's June 24, 2003 notice of a differing site condition. *Id*. at 353-55. None of the subsequent bilateral modifications cited by the Government provided Metcalf with any compensation for these contract breaches. Then, Metcalf incurred substantial delays in remediating the chlordane situation, despite being afforded an extension. Unfortunately, the court cannot award Metcalf damages for the 260-day period from November 19, 2003 to August 5, 2004 during which the Government failed to investigate or act on Metcalf's notice of a differing site condition, because post-January 2006 delays, primarily occasioned by the chlordane remediation, were responsible for Metcalf not completing the project on time. *See Essex Electro Eng'rs Inc. v. Danzig*, 224 F.3d 1283, 1295 (Fed. Cir.

11

2000) ("A government act that delays part of the contract performance does not delay 'the general progress of the work' when the 'prosecution of the work as a whole' would have been delayed regardless of the government's act." (quoting *Coath & Goss, Inc. v. United States*, 101 Ct. Cl. 702, 714-15 (1944))).

As for the 99 days of work that Metcalf missed, because of the circumstances surrounding Modification P00001, that amount of actual damages can be fairly ascertained from the trial record.

| METCALF'S COUNSEL: | Do you recall approximately what the amount of general condition costs were per day on this project? |
| --- | --- |
| MR. METCALF: | About $4,000.  And then [the Navy] audited us back to about $2,700, I think. |

1/25/10 TR at 1429.

Therefore, the court has determined that Metcalf is entitled to $272,191.59, plus interest.[15]

## III.   CONCLUSION.

For the reasons discussed herein, Plaintiff is liable to the Navy for liquidated damages in the amount of $2,673,507, plus interest, to be offset by $272,191.59, plus interest that the Navy owes Metcalf for actual damages.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[15] The Government agrees that Metcalf is entitled to 1.83% general overhead rate. 3/23/12 Gov't PT D Br. at 21 (citing DX 2934A at 67 (Weathers)).